## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| THADDEUS MURRELL, AKILAH MURRELL, MOSES ANTHONY MURRELL, and MAYA YVONNE MURRELL, individuals | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. _____ |
| v. | ) ) | |
| FRONTIER AIRLINES, INC., a Colorado Corporation, and TREGO DUGAN AVIATION OF GRAND ISLAND, INC., a Nebraska Corporation | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

COMES NOW, Plaintiffs, Thaddeus Murrell and Akilah Murrell, along with their children, Moses Anthony Murrell and Maya Yvonne Murrell, who complain of the Defendants as follows:

## SUMMARY OF CLAIMS

This Complaint is filed by Plaintiffs claiming discriminatory acts of Defendants as well as Plaintiffs arbitrary and capricious removal from Frontier Airlines Flight # 225 on July 30, 2019, by Defendants in violation of the laws of the United States and the State of Colorado.

## JURISDICTION & VENUE

1.   This case is brought pursuant to, among other things, the Airline Deregulation Act, §

49 U.S.C. § 40101, et seq. (more specifically 49 U.S.C. § 40127(a) and 49 U. S. C. § 44092 (b)

as well as the breach of contract of Plaintiffs' rights set forth in Frontier Airlines Contract of

Carriage (Exhibit A).  This Federal District Court has jurisdiction over this action pursuant to 28

U.S.C. § 1331, 1343 and 1367.

2.   The Court has upon service personal jurisdiction over Defendants because Defendants

are engaged in the regulated business of air transportation.  Frontier Airlines, Inc. is incorporated

in the State of Colorado.  Trego Dugan is incorporated in the State of Nebraska.  Defendants

each regularly do business in or engage in business practices impacting Plaintiffs and those

situated like them, who are residents of Colorado.

3.      Venue is proper in the United States District for the District of Colorado under 28

U.S.C. § 1391 because Defendants engage in substantial business in this Federal District.  Also,

Frontier Airlines operates out of Denver International Airport, located within this District.

Further, the Frontier Airlines Contract of Carriage partially impacting this transaction was

entered into in Colorado and contains a Colorado choice of law provision.

## PARTIES

4.   Plaintiff Thaddeus Murrell (hereinafter "Mr. Murrell") is an African-

American male and a resident of Colorado.

5.   Plaintiff Akilah Murrell (hereinafter "Mrs. Murrell") is a Canadian born

African-American female and a resident of Colorado.

6.   Plaintiffs' minor children, Moses Anthony Murrell  ("Moses") and Maya Yvonne Murrell ("Maya") are each African-American and were present during the entire incident set forth herein.  They were seven and ten years old at the time.

7.   Defendant Frontier Airlines, Inc. is a Colorado Corporation ("Frontier") and is duly authorized to conduct business in the State of Colorado.  Frontier operates out of the East Terminal at Denver International Airport located in the City and County of Denver, State of Colorado.

8.   Defendant Trego Dugan Aviation of Grand Island, Inc., is a Nebraska Corporation ("Trego Dugan") and provides ground handling services for, amongst others, Frontier, including those referenced herein.  Trego Dugan knew or should have known that Frontier conducted business in Colorado and Trego Dugan engaged in commerce foreseeably impacting Colorado interests.

9.   This lawsuit challenges the conduct of employees of Defendants under circumstances where Defendants are liable under the doctrine of respondeat superior.  These Frontier and/or Trego Dugan employees consisted of at least four females.  Their full names are unknown at this time.

10. At least three unnamed flight staff were employees of Frontier and were working in that capacity on July 30, 2019, as to Frontier Airlines Flight #225 departing Ft. Lauderdale, Florida, and arriving in Denver, Colorado, on that date.  There was also involved in the facts set forth below an employee of Trego Dugan known merely as "Cindy".  No other identifying information about her is known.

## GENERAL ALLEGATIONS

11. This Complaint is filed to redress, among other things, the racial discrimination and wrongful profiling of African-American passengers by Frontier Airlines as well as Defendants arbitrary and capricious removal from a Frontier Airlines Flight.  On Tuesday, July 30, 2019, Mr. and Mrs. Murrell, along with their two children, Maya and Moses, were passengers on Frontier Flight #225 from Ft. Lauderdale, Florida, to Denver, Colorado.  Before departure, Plaintiffs were discriminated against, harassed, humiliated and unjustly removed from the flight by Frontier employees and/or Trego Dugan employees.  They were also, among other things, wrongfully removed from that flight.

12. Despite the fact that no member of the Murrell family committed any wrongful acts nor created a security risk, Plaintiffs were unjustly removed from the flight in front of other passengers. Plaintiffs were removed from the flight at the insistence of at least one particular flight attendant, whose name is unknown.  Her unprofessional and outrageous conduct independently with others caused distress for Plaintiffs and their minor children.

13. No law enforcement or air marshal was ever contacted as to any of the events of July 30, 2019, and no report to any third person or entity is known to Plaintiff to have been made. Plaintiffs were not arrested or even questioned by law enforcement.  In fact, they had done nothing wrong illegal.

## FACTS

14.     In July 2019, Plaintiffs and their children were concluding a trip made to Florida. Plaintiffs are veteran travelers and have flown on many airlines, including domestic and

4

international flights.  Plaintiffs' children were also experienced travelers and had flown on
numerous domestic and international flights before this date.

15. On July 30, 2019, Plaintiffs were ticketed passengers on Frontier Flight #225 ("the
flight").  This flight would transport them home to Denver.

16. Plaintiffs purchased priority boarding for the flight.  They paid a premium price
for the seats so they could sit toward the front of the airlines since they were traveling with their
two children.

17. Mr. Murrell was assigned to seat number 3C and Mrs. Murrell was assigned to seat
number 3D.  Their minor children were assigned to seats next to their parents.

18. As the Murrell family boarded their seats, they placed their baggage in the overhead
compartment.  The Murrell's son because of acute peanut related allergies and sensitivity
requires an epi-pen near him at all times.  He also keeps nearby two asthmas inhalers.  His epi-
pen and those asthma inhalers were placed in one of the family's bags in the overhead
compartment right above them in row 3 as traditionally done by this family.

19.     Without any warning, notice or explanation, and unidentified Frontier Employee
Flight Attendant began moving the family's bags out of the compartment over their head and
into another compartment farther away and out of arms reach of the Murrell family.  Meanwhile,
a Caucasian male passenger whose identity is not known had placed his bag in the same
overhead compartment, but received no attention from any Frontier Employee.  The Caucasian
male passenger's bag was not touched nor moved.

20. The Murrells learned later that a small sign was posted on the overhead compartment
providing instruction as to the placement of baggage.  Besides the conduct from the Flight
Attendant regarding the Murrells' bags, they observed no other passengers' bags being moved,

nor were any other passengers confronted or chastised for their bag placement. Any signage used by Defendants as justification for actions targeting Plaintiffs by Defendants was merely pretextual.

21.     Mrs. Murrell, concerned about the access to the epi-pen, notified an Frontier Employee Flight Attendant about her son's peanut allergy and inquired as to why her bags were being relocated. The Employee Flight Attendant's response was one of distrust, annoyance and discourtesies. This Frontier employee was inexplicably angry and began mumbling under her breath notifying another flight attendant, who came from the back of the plane.

22. The second Frontier Employee Flight Attendant did not address the Murrell family nor did she make any attempt to explain any necessity for the moving of only the Murrell family's bags and not the bags of other, Caucasian passengers. The second Flight Attendant also began mumbling under her breath, saying things like, "this is not happening..." The two Flight Attendants were heard by the Murrells to communicate with one another about the Murrell family, but not in regular conversation, but in some sort of code. However, based on their conduct and body language, it was obvious they were talking about the Murrell family.

23. One Flight Attendant next positioned herself in the empty row of seats directly behind Mr. Murrell. Her hand rested on the headrest of the seat of Mr. Murrell.

24. Mr. Murrell intended to make suggestion to the Flight Attendant about the placement of the Murrell family bags as a result of his family being singled out and no other passengers having received such treatment. Since the Flight Attendant was directly behind him, it was difficult and awkward for Mr. Murrell to turn his head all the way around to participate in a polite conversation. Mr. Murrell therefore decided to stand up and turn to speak with the Flight Attendant directly behind him while other passengers continued to board the flight.

25.     Mr. Murrell began to speak to the Flight Attendant directly behind him in an amicable manner with a good faith intent to resolve issues as to the placement of the Murrell bags, but the Flight Attendant cut him off and responded loudly and aggressively.  She stated, "you didn't see the sign?!" in a hostile, mocking manner.  Surprised, Mr. Murrell began to answer explaining that no, they in fact had not seen the signs as they were boarding the plane with two small children.  It was noted that no other passengers' bags were moved.

26. The Flight Attendant next began visibly grimacing and she became clearly angry. The Murrell family was in complete shock at her response.  Mr. Murrell sat back down in his seat and no further interaction occurred for moments thereafter.  The incident was over.  The Murrell's and no Frontier attendant were at this time interacting.  Passengers were boarding the plane.  All was uneventful.

27. Mrs. Murrell then observed other flight attendants greet all other Caucasian patrons boarding the plane, helping them to their seats in a friendly, courteous manner.  Mrs. Murrell further personally observed both flight attendants greet and say hello to all the Caucasian children who boarded the flight, while never once even acknowledging the Murrell children.

28. Just prior to what seemed to be an uneventful conclusion of the boarding process, a different individual believed to be the Desk Agent that had previously interrogated the Murrells about their priority status came aboard the plane.  This unknown individual was believed to be an employee of Trego Dugan with the name of Cindy.  Cindy told Mr. Murrell he was being removed from the plane.  Mr. Murrell inquired as to why this would occur and the Desk Agent referenced that this directive came from the pilot of the plane.

29. At no point did the pilot ever have contact with Mr. Murrell or any member of the Murrell family.  It is believed that this statement by the Desk Agent was false.  It is believed that

Frontier, upon information and belief, will take the position that it was this employee of Trego Dugan that was responsible for the decision to remove the Murrell family from the flight pursuant to a Ground Handling Agent between Frontier and Trego Dugan.  Despite request, Frontier refuses to provide such Ground Handling Agent to Plaintiff citing confidentiality.

30.  Mr. Murrell attempted to secure an explanation as to why he was being removed from the flight.  He was traveling with his wife and small children and was legitimately confused as to the preceding series of events.

31.  Within minutes, and separately, Ms. Murrell and the Murrell children, despite no hint or allegation of wrongdoing by them, were also removed from the flight.

32. Mr. Murrell complied with all requests made of him while on the flight.  At no point was there: any altercation; any refusal of Mr. Murrell or any member of his family to obey any order; or any conduct that would justify or permit Mr. Murrell or his family being removed.  Said removal was arbitrary and capricious as well as believed to be being racially motivated.

33. The Murrells were unjustifiably removed from the flight in front of other passengers, despite the fact that they posed no security risk and committed no wrongful acts.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER 49 U.S.C. § 40127(a)**

34. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-33, inclusive, as if those allegations were set forth herein verbatim.

35. At all times relevant to the events described above, Frontier Employee Flight Attendants, on Tuesday, July 30, 2019, were each an employees and/or agents of Frontier Airlines.  Likewise, the Desk Attendant referenced herein was employed by Trego Dugan as an employee and/or agent.  The discriminatory practices committed by the Frontier Employee Flight

Attendants and/or the Trego Dugan Desk Attendant as described above occurred under authority afforded to each of them by the respective Defendants.  Each each acted within the scope of their reasonable duties.

36. Defendants Frontier and Trego Dugan are liable for all actions of their agents and employees pursuant to the doctrine of respondeat superior.

37. The aforementioned Frontier Employee Flight Attendants and the Trego Dugan Desk Attendant individually and collectively by their hostile treatment of Plaintiffs on Frontier Flight #225 on July 30, 2019 engaged in intentional discrimination based on Plaintiffs' race, color or national origin.  In so doing, Defendants discriminated against Plaintiffs thereby denying each Plaintiff, among other things, of their ability to enforce their own contract with Defendant as evidenced by the ticket they purchased to travel Frontier Airlines Flight #225 on July 30, 2019, from Ft. Lauderdale, Florida, to Denver, Colorado, as well as the right to not be discriminated against as a result of race.

38. The foregoing actions by the Defendants and their employees constitute deprivation of Plaintiffs' right to make and enforce contracts regardless of their race in violation of 42 U.S.C. § 40127(a) which states:

> Person's in air transportation – An air carrier… may not subject a person in air transportation to discrimination or the basis of race, color, national origin, religion, sex or ancestry.

39. The removal of the Murrell family was an act of discrimination perpetuated by Defendants based on race.

40. As a direct, foreseeable and proximate cause of Defendant's discrimination and wrongful acts, Plaintiffs suffered humiliation, fear, anxiety, mental anguish, emotional distress, inconvenience and other economic loss or damage.

41. The Plaintiffs were injured in an amount of no less than $75,000 each.

42. Defendant's acts alleged herein are intentional, malicious, oppressive and in conscious disregard for Plaintiffs' rights.  As such, punitive damages might be warranted against Defendant might be in order to punish such oppressive conduct.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT – CONTRACT OF CARRIAGE**

43. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-41, inclusive, as if those allegations were set forth herein verbatim.

44. Defendants Frontier & Trego Dugan are liable for all actions of their agents and employees pursuant the doctrine of respondeat superior.

45. Paragraph 3 of the Frontier Airlines Contract of Carriage (Exhibit A) sets forth the grounds whereby Frontier may rightfully remove and refuse to transport passengers such as Plaintiffs.

46. Plaintiffs were each removed by Defendants contrary to the terms and conditions of the Frontier Airline Contract of Carriage.

47. As a direct, foreseeable and proximate cause of Defendants' breach of contract Plaintiffs suffered damages and economic loss.

48. The Plaintiffs were damaged in an amount to be proven at trial.

49. Defendant's acts alleged herein were intentional, malicious, oppressive and in conscious disregard for Plaintiffs' rights.  As such, punitive damages might be warranted against Defendants in order to punish such oppressive conduct.

## THIRD CAUSE OF ACTION
## VIOLATION OF 49 U.S.C. § 44092 (b)

50. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-49,

inclusive, as if those allegations were set forth herein verbatim.

51. As stated in 49 U.S.C. § 44902 (b)

> Permissive refusal – subject to regulations of the Under Secretary, an air
> carrier or interstate air carrier,… may refuse to transport a passenger… which
> the carrier decides is, or might be, inimical to safety.

52. The decision to refuse transport is that of the air carrier.

53. The air carriers decision to transport is not without limitation, that decision must not

be arbitrary or capricious.

54. Frontier is understood to take the position that it did not make the decision to remove

the Murrell family for the Flight, that this function had been delegated to Trager Dugan by

contract.

55. Whomever was responsible for the decision to remove the Murrell family from the

Flight, such decision was arbitrary and capricious and is in violation of 49 § 44902 (b).

56. Defendants have violated 49 U.S.C. § 44902 (b)

57. Such violations has caused damage to each Plaintiff.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter Judgment in favor of Plaintiffs and

against Defendants, jointly and severely, as follows:


A.  A Judgment that the actions of Defendants described above: constitute

discrimination on the basis of race in violation of 49 § U.S.C. 40127 (a); that Defendant violated

49 § U.S.C. 44902 (b) by removing the Murrell family arbitrarily and capriciously for the flight;

and Defendants breached the Frontier Airlines Contract of Carriage.

      B.      An award to Plaintiffs for their expenses, costs, fees, expert witness fees, and

other disbursements associated with the filing and maintenance of this action, including

reasonable attorneys' fees.

      C.  Damages to be awarded for general, consequential and special damages as well as all

other damages as recognized by Colorado law in the amount of not less than $75,000 to each

Plaintiff.

      D.  Exemplary damages to such can be proven.

      E.  Pre and post judgment interest.

      F.  Such other and further relief to which Plaintiffs may be justly entitled.

**A JURY TRIAL DEMANDED FOR ALL ISSUES RAISED HEREIN**

Dated this 29th day of April, 2020.

      Respectfully submitted,

                    FELDMAN NAGEL CANTAFIO PLLC

                    By:  /s/ Ralph A. Cantafio, Esq.
                        Ralph A. Cantafio, Esq.
                        1875 Lawrence Street, Suite 730
                        Denver, Colorado 80202
                        (303) 813-1200 – Telephone
                        ralph@fncmlaw.com

                        ATTORNEY FOR PLAINTIFFS